IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID SANTIAGO and BRIDGETTE MEDEIROS, | ) ) | CIVIL NO. 10-00467 SOM/KSC |
| Plaintiffs, | ) ) ) | ORDER GRANTING SUMMARY JUDGMENT |
| vs. | ) ) ) | |
| BISMARK MORTGAGE COMPANY, LLC; ISLAND HOME LOANS; JOHN DOES 1-20; JANE DOES 1-20; DOE CORPORATIONS 1-20; DOE PARTNERSHIPS 1-20; DOE ENTITIES 1-20; and DOE GOVERNMENTAL ENTITIES, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER GRANTING SUMMARY JUDGMENT

I.      INTRODUCTION.

        This lawsuit stems from a default on a construction
loan and a resulting foreclosure.  In November 2007, Plaintiff
David Santiago obtained a six-month loan from Defendant Bismark
Mortgage Company ("Bismark"), through Defendant Island Home
Loans, to finance construction of Santiago's home on the Big
Island of Hawaii.  Santiago, aided by his girlfriend, Plaintiff
Bridgette Medeiros, became unable to make payments on the loan,
and Bismark ultimately foreclosed on the property.  Santiago and
Medeiros then filed this lawsuit, alleging that Bismark and
Island Home Loans had violated the Real Estate Settlement
Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601-17, the Truth
in Lending Act ("TILA"), 15 U.S.C. §§ 1601-67f, and the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-92p.
Plaintiffs additionally assert eleven Hawaii common law claims.

Now before the court is Bismark's motion for summary
judgment. The court finds that a hearing on this matter is
neither necessary nor appropriate. <u>See</u> Local Rule 7.2(d). The
court concludes that Medeiros has no standing to bring RESPA,
TILA, or FDCPA claims, that RESPA does not provide a private
right of action for Santiago's failure to provide a particular
informational booklet to Santiago, that TILA provides no
rescissionary remedy for Santiago's type of loan, that Santiago's
TILA damages claim is time-barred, and that there is no evidence
that Bismark violated the FDCPA. This leaves no genuine issues
of material fact as to any federal claim. The court declines to
exercise supplemental jurisdiction over Plaintiffs' remaining
state law claims. Accordingly, the court grants summary judgment
to Bismark and dismisses this case.

II.      <u>FACTUAL BACKGROUND.</u>

Santiago obtained a six-month loan in November 2007
from Bismark, though Island Home Loans, to finance construction
of a new home on the Big Island. <u>See</u> David Santiago's Decl. Opp.
Def.'s Mot. Summ. J. ("Santiago Decl.") ¶¶ 5-6, 8, 13-14, 24, ECF
No. 31-1; Def.'s Concise Stmt. Facts Supp. Mot. Summ. J.
("Bismark's Facts") Nos. 3, 5, ECF No. 11. At the same time,
Santiago executed a construction mortgage in favor of Bismark.

Bismark's Fact No. 4. The property was not Santiago's residence at the time the loan closed. Santiago Decl. ¶¶ 5-6, 8; Bismark's Fact No. 6.

Santiago's "significant other," Medeiros, although not herself a borrower, apparently assisted Santiago with loan payments. Santiago Decl. ¶ 34; Decl. of Tabitha Bastien ("Bastien Decl.") Exh. H, ECF No. 11-10. When Santiago and Medeiros were unable to make payments on the loan, Santiago obtained several extensions from Bismark. Santiago Decl. ¶¶ 28-29; Bismark's Fact Nos. 15-16. Ultimately, however, Santiago and Medeiros could not keep up with the loan payments. Bismark's Fact No. 18. Bismark notified Santiago of the debt by letter from the law firm of Rush Moore LLP, on February 8, 2010. Bismark's Fact No. 23. Bismark foreclosed on the property in April 2010. Bismark's Fact Nos. 19-20.

On June 8, 2010, after the foreclosure had been completed, Bismark filed an ejectment suit in Hawaii state court. Bastien Decl. ¶ 13. On August 13, 2010, Plaintiffs filed this lawsuit. See Compl., ECF No. 1.

According to Santiago, when he obtained the construction loan, Defendants promised Santiago that he had been prequalified to obtain permanent financing once construction was completed. See Santiago Decl. ¶¶ 11, 17. However, when he returned to Island Home Loans to convert his construction loan to

a permanent loan, he was allegedly told that he did not qualify for permanent financing, even though his circumstances had not changed.  Id. ¶¶ 25-26.  Santiago states that he was charged an interest rate of approximately 50 percent and paid over $43,000 in closing costs on the $119,000 construction loan.  Id. ¶¶ 20, 22-23 & Exh. F.

The Complaint asserts ten common law claims stemming from these basic allegations:  (1) fraudulent misrepresentation (Count III); (2) breach of fiduciary duty (Count IV); (3) unjust enrichment (Count V); (4) quiet title (Count VI); (5) mistake (Count VII); (6) unconscionability (Count VIII); (7) unfair and deceptive acts or practices (Count IX);  (8) failure to act in good faith (Count X); (9) recoupment (Count XI); and (10) negligent and/or intentional infliction of emotional distress (Count XII).  Plaintiffs also allege that Bismark is not properly conducting business in Hawaii and is violating Hawaii law by having no authorized collection agent in Hawaii.  Compl. ¶¶ 116-19; Decl. Robin Horner Opp. Mot. Summ. J. ("Horner Decl.") ¶¶ 15-16, 18 & Exh. A, ECF Nos. 31-2 & 31-3.

Additionally, according to Plaintiffs, Defendants violated various federal statutes.  First, Plaintiffs allege that Defendants failed to provide Santiago with the "special information booklet" that lenders must distribute to borrowers pursuant to RESPA.  Compl. ¶¶ 49-54.  Second, Plaintiffs allege

4

that Defendants failed to provide Santiago with proper disclosures at the time he applied for the construction loan and at the time the loan was consummated, in violation of TILA and RESPA. Compl. ¶¶ 55-60. Finally, Plaintiffs allege that Bismark failed to provide Plaintiffs with proper notice and an opportunity to contest the debt, in violation of the FDCPA. Compl. ¶¶ 120-24. In total, Plaintiffs assert fourteen claims for relief.

Plaintiffs allege that Santiago and Medeiros "resid[e]" in Hawaii, that Island Home Loans is a Hawaii company, and that Bismark is a Washington limited liability corporation. Compl. ¶¶ 1-3. Plaintiffs do not assert diversity jurisdiction. Plaintiffs assert federal question jurisdiction under 28 U.S.C. § 1331, along with supplemental jurisdiction for the state law claims under 28 U.S.C. § 1367. Compl. ¶¶ 6-7.

III.     STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v.

5

Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006); see also Fed. R. Civ. P. 56(c). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Id. The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See Balint v. Carson City, 180 F.3d 1047, 1054

(9th Cir. 1999).  On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts. See EEOC v. UPS, 424 F.3d 1060, 1068 (9th Cir. 2005); Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998).

IV.     ANALYSIS.

     A.     Plaintiffs' Rule 56(d) Request.

Plaintiffs' initial response to Bismark's motion consisted solely of a brief arguing that the summary judgment motion was premature and that genuine issues of fact existed as to the various claims.  See Pls.' Mem. Opp. Def.'s Mot. Summ. J., ECF No. 28.  However, Plaintiffs failed to attach any supporting evidence.  See id.  In response to a court order allowing Plaintiffs to belatedly file appropriate factual support for their opposition, Plaintiffs submitted a supplemental memorandum, a concise statement, declarations from Santiago and from Plaintiffs' counsel, and various supporting documents.  See ECF Nos. 30-31.  Plaintiffs' counsel's declaration now requests "additional time" pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.  Horner Decl. ¶ 6.

Under Rule 56(d) of the Federal Rules of Civil

Procedure,[1] the court may order a continuance, among other alternatives, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." "A party requesting a continuance pursuant to Rule 56([d]) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006). "Failure to comply with the requirements of Rule 56([d]) is a proper ground for denying discovery and proceeding to summary judgment." Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986); see also Tatum, 441 F.3d at 1100 (finding insufficient to support a Rule 56([d]) continuance an attorney's declaration that failed to explain how a continuance would allow the party to produce evidence precluding summary judgment). "To prevail on a Rule 56([d]) motion, the movant must also show diligence in previously pursuing discovery." See Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 732 F. Supp. 2d 1107, 1124 (D. Haw. 2010).

The sole support for Plaintiffs' request for continuance is their counsel's declaration. The sole reason

---

[1]The provisions now found in subsection (d) of Rule 56 were set forth in subsection (f) prior to December 1, 2010. The court construes Plaintiffs' "FRCP 56(f)" request as made pursuant to Rule 56(d). See Horner Decl. ¶ 6.

given for requesting a continuance is that Plaintiffs had been
unsuccessfully trying to settle the case.  See Horner Decl.
¶¶ 11-12.  Plaintiffs' counsel says that, given more time, he
would issue interrogatories and requests for production of
documents, would obtain affidavits from Plaintiffs, and would
take depositions.  Id. ¶ 19.  This declaration is inadequate to
support continuing the hearing so that Plaintiffs have additional
time to conduct discovery.  Far from diligently pursuing
discovery, Painsolvers, Inc., 732 F. Supp. 2d at 1124, it appears
that Plaintiffs made no attempt to conduct any discovery prior to
responding to Bismark's motion.  Instead, Plaintiffs simply
waited to see if the case would settle.  Counsel's litigation
strategy of conducting no discovery because of the possibility of
settlement is not grounds for continuing this motion.

Moreover, postponing this motion pending discovery by
Plaintiffs would not materially assist Plaintiffs in this action.
Bismark's summary judgment motion does not turn on the facts that
Plaintiffs seek to develop through discovery.  According to
Plaintiffs' counsel, additional discovery would demonstrate,
inter alia, that Defendants lied to Santiago by telling him he
would qualify for a permanent loan, that Defendants should never
have given Santiago the original loan because he did not qualify
for it, that Bismark's own underwriting guidelines required a
borrower to be prequalified for a permanent loan, that Defendants

misrepresented loan terms to Santiago, and that Defendants charged Santiago over 50 percent interest. <u>See</u> Horner Decl. ¶ 20. However, even if Defendants committed the acts described by Plaintiffs, Plaintiffs' federal claims would fail.

As discussed below, RESPA does not provide a private right of action for Defendants' alleged failure to provide a particular disclosure to Plaintiffs, Plaintiffs lack a TILA rescissionary remedy for their loan, their TILA claims are time-barred, and undisputed evidence in the records refutes Plaintiffs' claim that Bismark violated FDCPA in attempting to collect the debt. Disposition of the federal claims, therefore, does not depend on the results of the discovery that would be sought by Plaintiffs. As the federal claims are the source of this court's jurisdiction, and as this court is not exercising its discretion to retain the state law claims, the Rule 56(d) request is denied.

B.   <u>Medeiros's Standing to Assert Federal Claims.</u>

Bismark argues that Medeiros lacks standing because she is not a party to the loan. Mot. at 7-8. The court agrees that, because Medeiros was not a party to the loan and was not the subject of Bismark's collection efforts, she lacks standing to assert RESPA, TILA, and FDCPA claims.

Article III standing exists only when the plaintiff has suffered an injury-in-fact, i.e., an "invasion of a legally

protected interest" that is "concrete and particularized." Lujan
v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). It is well-
settled that a plaintiff who is not a party to a mortgage loan
cannot assert a claim against the lender for asserted violations
of RESPA stemming from the loan settlement process. See, e.g.,
Thomas v. Guild Mortg. Co., No. CV 09-2687-PHX-MHM, 2011 WL
676902, at *4 (D. Ariz. Feb. 23, 2011) (granting summary judgment
on RESPA and TILA claims for lack of standing because the
plaintiff was not a party to the mortgage, citing cases);
Cleveland v. Deutsche Bank Nat'l Trust Co., No. 08cv0802 JM(NLS),
2009 WL 250017 (S.D. Cal. Feb. 2, 2009) (dismissing TILA, RESPA,
fraud, and other claims of a plaintiff whose wife took out a
mortgage, reasoning that "someone who is not a party to [a]
contract has no standing to enforce the contract or to recover
extra-contract damages for wrongful withholding of benefits to
the contracting party").

    Similarly, to have standing to bring a claim under
TILA, a plaintiff must have been deprived of a statutory right to
disclosures that existed at the time of the contested
transaction. See DeMando v. Morris, 206 F.3d 1300, 1303 (9th
Cir. 2000); Crevier v. Welfare & Pension Fund for Local 701 (In
re Crevier), 820 F.2d 1553, 1555-56 (9th Cir. 1987); see, e.g.,
Thomas, 2011 WL 676902, at *4. Finally, courts have held that a
plaintiff lacks standing to pursue a claim under the FDCPA when

the debt collector never actually sought to collect the debt from the plaintiff. See, e.g., Kropelnicki v. Siegel, 290 F.3d 118, 130 (2d Cir. 2002) (dismissing FDCPA claim by putative debtor based on letter addressed to her daughter); Clingman v. Somy, No. 2:10-CV-1834 JCM (LRL), 2011 WL 383951, at *5 (D. Nev. Feb. 3, 2011) (dismissing FDCPA claim because the plaintiff was not a party to the note and because the defendants did not seek to collect the debt from the plaintiff).

The loan documents bear Santiago's name as the sole signatory, and Plaintiffs admit that "Bridgette was not on the loan." See Santiago Decl. ¶ 34. Moreover, Bismark's contested communication regarding the loan was addressed solely to Santiago as the borrower. See Beh Decl. Exh. J. Because Medeiros was not a party to the mortgage loan, and did not receive Bismark's collection notice, she lacks standing to assert RESPA, TILA, and FDCPA claims stemming from execution of the loan or collection of the debt.

C. RESPA.

RESPA requires mortgage lenders to disclose the costs associated with real estate closings and prohibits sellers and lenders from engaging in certain practices during escrow and closing. See Bloom v. Martin, 77 F.3d 318, 320 (9th Cir. 1996); 12 U.S.C. §§ 2601-10. One of its disclosure provisions requires lenders to provide to loan applicants, shortly after applying, a

standardized "special information booklet" that discusses the settlement costs associated with the loan. See 12 U.S.C. § 2604; 24 C.F.R. § 3500.6. RESPA also requires lenders to provide "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur." See 12 U.S.C. § 2604(c); see also 24 C.F.R. § 3500.7. Santiago argues that Defendants did not give him the special information booklet "within the time required," and that Defendants failed to provide the good faith estimate. Compl. ¶¶ 52, 58. The court agrees with Bismark that Santiago has no private right of action for the alleged disclosure violations.

Unlike the provisions of RESPA for which courts have upheld the existence of a private right of action, § 2604 does not explicitly authorize private lawsuits, nor does it contain any remedies for such lawsuits. Cf. 12 U.S.C. § 2605(f) (permitting suits for damages, along with costs and attorney's fees, for violations of disclosure requirements related to servicing of mortgage loans and administration of escrow accounts); id. § 2607(d) (authorizing private lawsuits and recovery of costs and attorney's fees, for violations of rules against kickbacks and unearned fees associated with real estate settlement service); id. § 2608(b) (providing penalty of treble damages against any property seller who requires the buyer to buy title insurance from a particular company); cf. Martinez v. Wells

13

<u>Fargo Home Mortgage, Inc.</u>, 598 F.3d 549, 557 (9th Cir. 2010) (questioning whether a plaintiff may bring a private cause of action for alleged violations of RESPA Section 4, 12 U.S.C. § 2603, given that "[n]o express cause of action was created by Congress" in that section). Section 2614, which grants jurisdiction to federal courts for violations of RESPA and sets forth limitations periods for claims, provides for jurisdiction in the federal district courts only for actions brought under §§ 2605, 2607, and 2608, and sets forth statutes of limitations solely for those provisions. <u>See</u> 12 U.S.C. § 2614.

In light of the statutory structure, many district courts in the Ninth Circuit, including the District of Hawaii, have concluded that no private right of action exists for violations of § 2604. <u>See, e.g.</u>, <u>Glover v. Fremont Inv. & Loan</u>, No. C-09-03922 (JCS), 2009 WL 5114001, at *5 (N.D. Cal. Dec. 18, 2009) ("RESPA creates a private right of action for only three types of wrongful acts: 1) payment of a kickback for real estate settlement services, 12 U.S.C. § 2607(d); 2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and 3) failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f)"); <u>Mier v. Lordsman Inc.</u>, Civ. No. 10-00584 JMS/KSC, 2011 WL 285862, at *8 n.9 (D. Haw. Jan. 27, 2011) (dismissing RESPA claims);

14

<u>Tompkins v. Bank of Am. N.A.</u>, No. CV-09-2014-PHX-GMS, 2010 WL 396367, at *4 (D. Ariz. Jan. 28, 2010) (same); <u>Madrid v. J.P. Morgan Chase Bank</u>, No. 09-cv-00731-JAM-GGH, 2009 WL 3255880, at *3 (E.D. Cal. Oct. 8, 2009) (same); <u>Llaban v. Carrington Mortg. Servs., LLC</u>, No. 3:09-cv-01667-H-POR, 2009 WL 2870154, at *5 (S.D. Cal. Sept. 3, 2009) (same).  This court agrees that no private right of action exists for the disclosure violations alleged in this case and, accordingly, grants summary judgment to Bismark on the RESPA claim.[2]

    D.   <u>TILA.</u>

TILA's purpose is "to foster the informed use of credit by assuring a meaningful disclosure of credit terms." <u>Hauk v. JP Morgan Chase Bank USA</u>, 552 F.3d 1114, 1120 (9th Cir. 2009) (internal alterations omitted), <u>quoting</u> <u>Grimes v. New Century Mortg. Corp.</u>, 340 F.3d 1007, 1011 (9th Cir. 2003) (McKeown, J., dissenting).  For closed-end (fixed term) credit transactions, including mortgages, required disclosures include, <u>inter alia</u>, the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule.  <u>See</u>

---

[2]Bismark argues alternatively that Defendants were exempted from RESPA's requirements because: (1) the loan was not for purchase of residential property; (2) a one-year statute of limitations applies; and (3) the loan was only for six months, with no offer of permanent financing, and was used for construction.  <u>See</u> Mot. at 8-9.  Because the court concludes that no private right of action exists under RESPA for the alleged violations, the court need not address these alternative arguments in favor of summary judgment.

15 U.S.C. § 1638(a).  Transactions that are both "residential mortgage transactions," as defined by TILA, and are also subject to RESPA require that the lender deliver or mail good faith estimates of the required disclosures within three days after the consumer's written application is received, or prior to consummation, whichever is earlier.  <u>See</u> 15 U.S.C. §§ 1602(w), 1638(b)(2).  When the actual APR varies from the good faith estimate by more that 1/8 of 1 percent, the lender must issue redisclosures no later than consummation or settlement.  15 U.S.C. § 1638(b)(2); 12 C.F.R. §§ 226.17(f), 226.19(a)(2).

Santiago alleges that Defendants violated TILA by failing to "fully and timely disclose[]" "the loan terms, the finance charge, the annual percentage rate, the right to rescind, and other consumer rights."  Compl. ¶ 57.  Santiago also alleges that Defendants violated TILA by failing to provide TILA disclosures or the RESPA good faith estimate within three business days of receipt of the loan application.  Compl. ¶ 58. Santiago seeks damages and rescission of the transaction.  Compl. ¶¶ 59-60.  Neither of these remedies is available to him.

First, Santiago cannot seek to rescind the loan.  Loans to finance construction of a dwelling, when the primary security interest is taken in the land or dwelling, are not rescindable under TILA.  Section 1635(e)(1) exempts from the right of rescission "a residential mortgage transaction as defined in

16

section 1602(w) of this title." 15 U.S.C. § 1635(e)(1). Section 1602(w) defines "residential mortgage transaction" to include "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w); cf. Elizabeth Renuart & Kathleen Keest, Truth in Lending 390 (6th ed. 2007) ("The largest group of non-rescindable credit transactions involving a home are those to finance the construction or purchase of the home or to finance the construction of a primary dwelling on land already owned by the consumer."). In this case, Santiago purchased a lot on which to build his home, subsequently obtained a construction loan from Defendants for that purpose, and gave Bismark a security interest in the property. See Santiago Decl. ¶¶ 6, 8, 14, 16; Bastien Decl. Exhs. D, F. Santiago's contention that he was promised long-term financing, see Santiago Decl. ¶ 11, does not change the analysis, because the loan promised would still be to finance construction or acquisition of a dwelling, secured by an interest in that dwelling. Accordingly, even if Defendants' actions violated TILA disclosure requirements, the nature of this loan gives Santiago no TILA rescissionary remedy.

Second, Santiago's damage remedy under TILA is time-barred. A TILA plaintiff may seek actual damages for a lender's failure to provide proper disclosures. See 15 U.S.C. § 1640(a).

17

Under 15 U.S.C. § 1640(e), however, an action for damages by a private individual must be instituted "within one year from the date of the occurrence of the violation." The Ninth Circuit has interpreted this to mean that the limitations period for a damage claim based on allegedly omitted or inaccurate disclosures begins on "the date of consummation of the transaction." King v. Cal., 784 F.2d 910, 915 (9th Cir. 1986); see also Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (holding that when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit). To the extent Santiago seeks money damages for TILA violations arising out of the November 2007 loan, those claims are barred by the one-year statute of limitation, as Santiago did not file his Complaint until August 13, 2010.

Santiago argues that the statute should be equitably tolled because Bismark and Island Home Loans repeatedly granted him extensions of time to repay the loan, which prevented him from seeking a judicial remedy until the statute had already run. Opp. at 7-8. Courts may toll the limitations period if the one-year rule would be unjust or would frustrate TILA's purpose. See King, 784 F.2d at 915. For example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of a borrower's TILA claim, the court may toll the statute of limitations. Id.; see also Meyer v.

18

<u>Ameriquest Mortg. Co.</u>, 342 F.3d 899, 902-03 (9th Cir. 2003)

(refusing to toll the statute of limitations on a TILA claim

because the plaintiff was in full possession of all loan

documents and did not allege any concealment of loan documents or

any other action that would have prevented discovery of TILA

violations).

Santiago does not present facts indicating that any

information was concealed or that he was somehow prevented from

discovering any potential TILA claim. The correspondence

exchanged by Santiago and Medeiros with Bismark does not suggest

that Bismark sought to conceal information from Santiago about

the nature or content of disclosures issued to Santiago, and

Bismark did not represent that it was entering into any kind of

tolling agreement by virtue of extending the loan repayment date.

It therefore appears that any TILA money damage claim arising out

allegedly inaccurate or incomplete disclosures is time-barred.

<u>Cf.</u> <u>Hubbard</u>, 91 F.3d at 79 (denying equitable tolling when

borrower had the ability to compare the initial disclosures she

received with TILA's requirements and thereby learn that the loan

disclosures were inadequate).

     E.    <u>FDCPA.</u>

Congress enacted the FDCPA "to eliminate abusive debt

collection practices by debt collectors, to insure that those

debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote
consistent State action to protect consumers against debt
collection abuses." 15 U.S.C. § 1692(e). In furtherance of the
goals of the FDCPA, debt collectors are required to provide
consumers with adequate information concerning their legal
rights. Accordingly, the FDCPA requires that:

> Within five days after the initial
> communication with a consumer in connection
> with the collection of any debt, a debt
> collector shall, unless the following
> information is contained in the initial
> communication or the consumer has paid the
> debt, send the consumer a written notice
> containing-
>
> . . .
>
> (3) a statement that unless the consumer,
> within thirty days after receipt of the
> notice, disputes the validity of the debt, or
> any portion thereof, the debt will be assumed
> to be valid by the debt collector; [and]
>
> (4) a statement that if the consumer notifies
> the debt collector in writing within the
> thirty-day period that the debt, or any
> portion thereof, is disputed, the debt
> collector will obtain verification of the
> debt or a copy of a judgment against the
> consumer and a copy of such verification or
> judgment will be mailed to the consumer by
> the debt collector;
>
> . . . .

15 U.S.C. § 1692g(a).

The Complaint alleges that Defendants failed to give
Santiago notice and an opportunity to contest the debt he owed
and to request verification of this debt, as required by the

FDCPA.  See Compl. ¶¶ 121-22.  In support of its motion for summary judgment, Bismark submits a letter dated February 8, 2010, from the law firm of Rush Moore LLP to Santiago.  See Decl. of Walter Beh, II ("Beh Decl.") ¶ 3 & Exh. J, ECF No. 11-2 & 11-12.  The letter states that Rush Moore is attempting to collect a debt on behalf of Bismark Mortgage Company.  Id.  The letter further states, in relevant part:

> If you do not dispute the validity of the debt, or any part of it, within thirty (30) days after you receive this letter, the debt will be assumed to be valid.
>
> . . .
>
> If you notify me within thirty (30) days after you receive this letter, that the debt or any part of it is disputed, I will obtain verification of the debt and mail you that verification.

Id.  Bismark's counsel declares that he mailed the letter to Santiago and did not receive a response requesting validation of the debt from Santiago.  Id. ¶ 3.

Santiago, in his opposition brief, "aver[s] that [he] never received the required notice of the debt from Bismark and/or IHL to dispute it."  Opp. at 13.  Although Santiago was given extra time by the court to submit his opposition, he provided no admissible evidence on this point.  Thus, Santiago's declaration makes no denial of receipt, and the court finds no evidence at all on this point.  See generally Santiago Decl. ¶¶ 1-36.  Lacking such evidence, the court concludes that there

21

is no genuine issue of material fact as to Santiago's FDCPA claim.

F.    Remaining State Law Claims.

The remaining eleven counts asserted in the Complaint present exclusively state law claims: fraudulent misrepresentation (Count III); breach of fiduciary duty (Count IV); unjust enrichment (Count V); quiet title (Count VI); mistake (Count VII), unconscionability (Count VIII); unfair and deceptive acts or practices (Count IX); failure to act in good faith (Count X); recoupment (Count XI); negligent and/or intentional infliction of emotional distress (Count XII); and violation of Hawaii Revised Statutes Chapter 667 (Count XIII).  Having dismissed the asserted federal question claims, the court's jurisdiction over the state law claims is strictly supplemental, as Santiago has not asserted diversity jurisdiction under § 1332 or any other basis for jurisdiction.  See Compl. ¶¶ 6-7.

Supplemental jurisdiction, unlike federal question or diversity jurisdiction, is discretionary.  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  A court may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original

jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367.

When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Gibbs, 383 U.S. at 726.  Such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," but "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

This court has dismissed all of the claims over which it had original jurisdiction and identifies no factors making this case anything but the usual case in which supplemental jurisdiction is better declined.  Santiago's state-law claims are therefore dismissed without prejudice to any state court filing that may be appropriate under state law.

V.      CONCLUSION.

The court GRANTS Bismark's motion for summary judgment and dismisses from this suit Santiago's causes of action for violations of RESPA, TILA and FDCPA. Lacking federal question or diversity jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claims and DISMISSES this action. The clerk shall close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 4, 2011



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge